# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **STATE OF LOUISIANA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-614-JWD-SDJ** |
| **RLI INSURANCE COMPANY, LLC, et al.** | **CONSOLIDATED WITH NO. 19-640-JWD-SDJ** |

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the United States District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

### ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 15, 2020.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STATE OF LOUISIANA                                    CIVIL ACTION


VERSUS                                                NO. 19-614-JWD-SDJ


RLI INSURANCE                                         CONSOLIDATED WITH
COMPANY, LLC, et al.                                  NO. 19-640-JWD-SDJ

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are two Motions to Remand filed by Plaintiff, the State of Louisiana, through its Department of Natural Resources, Office of Conservation (State) in both the lead, No. 19-cv-614 (R. Doc. 6) and consolidated, No. 19-cv-640 (R. Doc. 6), cases. For the reasons given below, the Court **recommends** that both Motions to Remand (R. Doc. 6) be **granted** and that the State's cause of action be **remanded** to the 19th Judicial District Court in East Baton Rouge Parish for further proceedings.

I.    **BACKGROUND**

In 2016, Northstar Offshore Group, LLC, filed for Chapter 11 bankruptcy in the Southern District of Texas. *See In re Northstar Offshore Group, LLC*, No. 16-bk-34028 (Bankr. S.D. Tex. Dec. 2, 2016), ECF No. 88. As a result of the bankruptcy, Northstar sold most of its assets to Northstar Offshore Ventures, LLC (NOV).[1] However, Northstar did not sell its rights to certain oil and gas wells on property leased in Louisiana (Creole Wells or Leases). *See* Sale Order, *In re Northstar*, No. 16-bk-34028 (Bankr. S.D. Tex. Aug. 2, 2017), ECF No. 792-1 at 129 (Schedule

---

[1] NOV has since changed its name to Sanare Energy Partners, LLC. (No. 19-614, R. Doc. 1 at 3).

1.3(n) (Excluded Assets)); Northstar's Motion to Reject and Abandon at 3, *In re Northstar*, No. 16-bk-34028 (Bankr. S.D. Tex. Oct. 13, 2017), ECF No. 891. Instead, Northstar abandoned the Creole Wells and the Leases were rejected as part of the bankruptcy estate. *See* Order, *In re Northstar*, No. 16-bk-34028 (Bankr. S.D. Tex. Nov. 16, 2017), ECF No. 948.

Relevant here, the Creole Wells were covered by performance bonds[2] issued and guaranteed by various sureties: RLI Insurance Company (RLI); as well as Sompo International Insurance, Lexon Insurance Company and Lexon Surety Group (Lexon).[3] (No. 19-640, R. Doc. 1-1 at 3-4). RLI issued the original performance bond on October 11, 2012 (No. 19-640, R. Doc. 1-1 at 3, 11-19), which was later replaced by a performance bond issued by Lexon on March 22, 2016 (No. 19-640, R. Doc. 1-1 at 4, 32-40, 42). With the replacement bond, Lexon financially guaranteed[4] Northstar's agreement to:

> [P]lug and abandon the Subject wells, to remove all platforms, pilings, facilities, pits and to restore the surface pursuant to the Leases, the Rules, Regulations and Orders of the Commissioner of Conservation/Laws of the State of Louisiana and to pay all costs and expenses associated therewith . . . .

(R. Doc. 1-1 at 4, 33). According to the State, when Northstar's obligations to plug and abandon the wells "were discharged in bankruptcy" (No. 19-640, R. Doc. 1-1 at 7, 53-56), it "call[ed]" the performance bonds, demanding payment from Lexon (No. 19-640, R. Doc. 6-1 at 2); (No. 19-640, R. Doc. 1-1 at 57). Lexon, however, allegedly "refus[ed] . . . to honor the terms of the bonds." (No. 19-640, R. Doc. 6-1 at 2).

---

[2] The original bond was guaranteed by RLI Insurance Company. (No. 19-640, R. Doc. 1-1 at 11-19). A replacement bond was later issued by Lexon. (No. 19-640, R. Doc. 1-1 at 32-40, 42) ("This bond supersedes, replaces, and assumes any, and all past, present, and future liability of Bond RLB0014817," issued by RLI Insurance Company.). While RLI was originally named as a Defendant, it has since been dismissed with prejudice. (No. 19-640, R. Doc. 38).

[3] According to the Petition, Lexon was later acquired by Sompo.

[4] The Court makes no comment as to whether the Lexon performance bond is an "enforceable contractual obligation," which remains at issue in this litigation. (R. Doc. 19-640, R. Doc. 10 at 2 n.2).

Following Lexon's refusal, the State filed suit for specific performance[5] on August 20, 2019, in the 19th Judicial District Court, against the following Defendants: RLI Insurance Company, the surety guaranteeing the original bond; Sompo International Insurance, Lexon Insurance Company and Lexon Surety Group (Lexon), the entity guaranteeing the replacement performance bond; and Sanare Energy Partners, LLC, formerly known as Northstar Offshore Ventures, LLC (Sanare), the company that acquired Northstar's assets during the bankruptcy. (No. 19-640, R. Doc. 1-1 at 2-9). Although the State named Sanare in its Petition, it does not allege any cause of action against Sanare or demand any relief from the company. Instead, the State makes clear that it seeks an order requiring RLI or Lexon to comply with its obligations under the performance bonds. (No. 19-640, R. Doc. 1-1 at 9).

After being served, Sanare removed the lawsuit to federal court on September 16, 2019. (No. 19-614, R. Doc. 1). A week later, Lexon also removed the suit as a separate case, *State of Louisiana v. RLI Insurance Company*, No. 19-cv-640 (M.D. La. Sept. 23, 2019), which was later consolidated with the first. (No. 19-614, R. Doc. 34). Between the two Notices of Removal, Defendants alleged this Court has subject matter jurisdiction over the State's cause of action because it (1) is related to the Northstar bankruptcy proceeding, and (2) meets the conditions for complete diversity. *See* 28 U.S.C. § 1334(b) ("district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."); 28 U.S.C. § 1452(a) ("A party may remove any . . . civil action . . . to the district court . . . if [it] has jurisdiction of such claim or cause of action under section 1334 of this title."); 28

---

[5] *Chevron U.S.A., Inc. v. Atmos Pipeline & Storage, LLC*, 2018 WL 4517898, at *8 (W.D. La. Sept. 20, 2018) ("specific performance is a remedy for breach of contract").

U.S.C. § 1332(a) (parties must be completely diverse and amount in controversy must exceed $75,000.00); 28 U.S.C. § 1441(a) (removal of civil actions).

Since removal, the State has dismissed Sanare Energy Partners, Northstar Offshore Ventures and RLI Insurance Company, with prejudice, from both cases. (No. 19-614, R. Docs. 5, 33), (No. 19-640, R. Docs. 5, 38). It has likewise filed Motions to Remand in both cases, which the Court now considers together. (No. 19-614, R. Doc. 6), (No. 19-640, R. Doc. 6).

## II.    DISCUSSION

In its Motions to Remand, the state argues remand is warranted on 3 grounds—Eleventh Amendment immunity; lack of complete diversity; and lack of bankruptcy jurisdiction or, in the alternative, abstention. The Court has considered each argument below. After applying the law to the instant case, it recommends remand.

### A.    Eleventh Amendment Immunity

Citing the Eleventh Amendment, the State first argues that "this Honorable Court lacks jurisdiction over all claims against the State of Louisiana," and it is "entitled to sovereign immunity from the instant suit." (R. Doc. 19-614, R. Doc. 6-1 at 5). There is an obvious flaw in this argument — the State is the Plaintiff in this suit, and there are no claims "against" it. But that aside, certain "[c]onstitutional questions . . . ought not be reached unless doing so is necessary to the resolution of a case" *In re Katrina Canal Litigation Breaches*, 524 F.3d 700, 708 (5th Cir. 2008).  As discussed below, the Court finds no basis to exercise jurisdiction over the State's lawsuit. It therefore declines to decide whether the State may still claim sovereign immunity after a suit it filed in state court, based on state law, is removed to federal court. *Id.* at 710-11 (collecting cases applying the 11th Amendment where a state was the plaintiff).

### B.    Complete Diversity

"Ordinarily in an action where a state is a party, there can be no . . . diversity of citizenship because a state is not a citizen for purposes of diversity jurisdiction." *Louisiana v. Union Oil Co. of California*, 458 F.3d 364, 366 (5th Cir. 2006). "Likewise, state agencies that are" an arm or "alter ego of the state are not citizens for the purpose of diversity jurisdiction." *Batton v. Georgia Gulf*, 261 F. Supp. 2d 575, 583 (M.D. La. 2003) ("So the problem with diversity jurisdiction is not that the plaintiffs are citizens of Louisiana and the LDHH is a citizen of Louisiana. Instead, the problem is that LDHH," an alter ego of the State, "is not a citizen at all" and "having one defendant with no citizenship destroys diversity jurisdiction . . . ." *Id.* at 581). However, an "independent" agency — one that is "separate and distinct from the state" — is a citizen of the state. *PYCA Industries, Inc. v. Harrison County Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1416 (5th Cir. 1996) (if agency is independent, diversity jurisdiction may exist if the conditions of  28 U.S.C. § 1332 are otherwise met).

Aware of these principals, Defendants argue that the "Department of Natural Resources, Office of Conservation" (DNR) is the real party in interest — not the State. (No. 19-640, R. Doc. 10 at 10). Relevant here, the Department of Natural Resources is a department within the executive branch of state government, La. Rev. Stat. § 36:4 (listing executive departments); La. Rev. Stat. § 36:351 (creating DNR), and the Office of Conservation is part of the DNR, La. Rev. Stat. § 36:358 (Office of Conservation part of DNR). According to Defendants, because the DNR is an "independent agency," as opposed to an 'arm of the State' or its 'alter-ego,' the DNR is a citizen of Louisiana for diversity purposes. (No. 19-640, R. Doc. 10 at 11).

To establish jurisdiction under 28 U.S.C. § 1332(a) (diversity jurisdiction), there must be complete diversity among the parties and the amount in controversy must be met. Here, there is no

dispute that the amount in controversy is satisfied. (No. 19-640, R. Doc. 1-1 at 9). Moreover, none

of the Defendants appear[6] to be citizens of Louisiana. Therefore, the only issue is whether the DNR

is an alter ego of the State and therefore has no citizenship, or an independent agency with

Louisiana citizenship, as Defendants' claim. *See Batton*, 261 F. Supp. 2d at 581 (if an agency is

an alter ego of the state, it "is not a citizen at all" and "having one defendant with no citizenship

destroys diversity jurisdiction . . . .").

　　According to the Fifth Circuit, there are several factors to consider in determining an

agency's status:

> (1) whether the agency wields generally recognized corporate powers, such as the
> right to sue and be sued, hold property, and enter into contracts in its own name;
> (2) how the entity has been classified under and for purposes of state law, giving
> particular weight to state court decisions; (3) the agency's degree of financial
> independence from the state, including whether debt incurred on behalf of the
> agency becomes a general obligation of the state; (4) the extent of the agency's
> independent management authority; and (5) whether the entity is concerned
> primarily with local, as opposed to statewide problems.

*Health Educ. Auth. of Louisiana v. APCOA LaSalle Parking Co., LLC* (*HEAL*), 991 F. Supp. 2d

762, 764 (E.D. La. 2013) ("This analysis is "virtually identical" to the test used to determine

whether an agency is an 'arm of the state' for [Eleventh Amendment] immunity purposes.").

Application of these factors makes clear that the DNR is an alter ego of the State of Louisiana and

therefore has no citizenship.

---

[6] The Court notes that Lexon's Notice of Removal (No. 19-640, R. Doc. 1) does not sufficiently allege the citizenship of Defendant Sanare. According to the Notice of Removal, Sanare is a limited liability company (LLC) with 2 members, both of which are LLCs — Orinoco Natural Resources, LLC and Stockbridge Natural Resources, LLC (No. 19-640, R. Doc. 1 at 4). *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("the citizenship of a LLC is determined by the citizenship of all of its members"). Orinoco's members, Tom and Ana Clarke, are citizens of Virginia. (No. 19-640, R. Doc. 1 at 4). However, Lexon does not appear to know the citizenship of Stockbridge's only member, Tom Wiley. Instead, Lexon simply alleges that Tom Wiley is "not a citizen of the state of Louisiana." (No. 19-640, R. Doc. 1 at 4). This allegation is insufficient to establish complete diversity among the parties and Lexon has failed to meet its burden of establishing diversity jurisdiction. However, because the Court finds diversity is otherwise lacking because DNR is an alter ego of the state, and therefore has no citizenship, this issue is moot.

**Corporate Powers**. Defendants make much of the fact that the DNR, is a "body corporate with the power to sue and be sued," and "even" has a "**domicile**" in Baton Rouge. (No. 19-640, R. Doc. 10 at 12) (citing La. Rev. Stat. § 36:351(A)). But while Defendants correctly recite the DNR's corporate powers, Defendants misinterpret their significance. The DNR is no different than any other department in the executive branch of state government, La. Rev. Stat. § 36:4 (listing executive departments, including DNR), each of which is described as a "body corporate with the power to sue and be sued."[7] Indeed, federal courts have long recognized that "the ability of an agency to sue and be sued loses some of its traction in Louisiana because it is a power accorded all departments in the executive branch." *HEAL*, 991 F. Supp. 2d at 764; *see also Fireman's Fund Ins. Co. v. Dep't of Transp. & Dev., State of La.*, 792 F.2d 1373, 1375 (5th Cir. 1986) ("the State of Louisiana treats all of the executive departments the same and gives them all power to sue and be sued as corporate bodies."). The fact that the DNR has corporate powers, like every other executive department, does not necessarily weigh in favor of independence. This is especially true considering how state law characterizes the executive departments, including the DNR and its various offices.

**State Law Characterization**. In proceedings like this one — involving an executive department, including the offices and agencies within it — Louisiana courts have held that "the

---

[7] *See* La. Rev. Stat. § 36:51 (Department of State Civil Service is "a body corporate with power to sue and be sued" and is "domiciled in Baton Rouge"); La. Rev. Stat. § 36:101 (Department of Economic Development); La. Rev. Stat. § 36:151 (Department of Elderly Affairs); La. Rev. Stat. § 36:201 (Department of Culture, Recreation and Tourism); La. Rev. Stat. § 36:231 (Department of Environmental Quality); La. Rev. Stat. § 36:251 (Louisiana Department of Health); La. Rev. Stat. § 36:301 (Louisiana Workforce Commission); La. Rev. Stat. § 36:351 (Department of Natural Resources); La. Rev. Stat. § 36:401 (Department of Public Safety and Corrections); La. Rev. Stat. § 36:451 (Department of Revenue); La. Rev. Stat. § 36:471 (Department of Children and Family Services); La. Rev. Stat. § 36:501 (Department of Transportation and Development); La. Rev. Stat. § 36:601 (Department of Wildlife and Fisheries); La. Rev. Sat. § 36:621 (Department of Agriculture and Forestry); La. Rev. Stat. § 36:641 (Department of Education); La. Rev. Stat. § 36:681 (Department of Insurance); La. Rev. Stat. § 36:701 (Department of Justice); La. Rev. Stat. § 36:721 (Department of Public Services); La. Rev. Stat. § 36:741 (Department of State); La. Rev. Stat. § 36:761 (Department of the Treasury); La. Rev. Stat. § 36:781 (Department of Veterans Affairs).

State of Louisiana is the real party in interest and is indistinguishable from its executive

departments."[8] *Wright v. Moore*, 380 So.2d 172, 173 (La. App. 1 Cir. 1973); *Roberts v. Sewerage

& Water Bd. of New Orleans*, 634 So. 2d 341, 350 (La. 1994) (*Wright*'s "conclusion was

undoubtedly correct"). The Fifth Circuit has likewise acknowledged:

> In every recent case in which a Louisiana political entity has been held to be an
> 'arm of the state,' the state agency [or office] being sued was part of a department
> within the executive branch.

*Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 692 (5th Cir. 2002) (entity classified

as "political subdivision," which was not part of any executive department, was not an arm of the

state); *compare Earles v. State Board of Certified Public Accountants of Louisiana*, 139 F.3d 1033,

1039 (5th Cir. 1998) (State Board of Certified Public Accountants, an agency within the

Department of Economic Development, was an arm of the state); *Delahoussaye v. City of New

Iberia*, 937 F.2d 144, 147-48 (5th Cir. 1991) (University of Southwestern Louisiana, which was

governed by the State College and University System, an agency within the Department of

Education, was an arm of the state); *Neuwirth v. Louisiana State Board of Dentistry*, 845 F.2d 553,

556 (5th Cir. 1988) (Board of Dentistry, an agency within the Department of Health and Human

Resources, was an arm of the state); *Darlak v. Bobear*, 814 F.2d 1055, 1059 (5th Cir. 1987)

(Charity Hospital of New Orleans, which was governed by the Department of Health and Human

Resources, was an arm of the state); *Voisin's Oyster House v. Guidry*, 799 F.2d 183, 186 (5th Cir.

1986) (Wildlife and Fisheries Commission, which is part of the Department of Wildlife and

Fisheries, was an arm of the state). The Fifth Circuit has even suggested, albeit in dicta, "that all

---

[8] Both the DNR and its Office of Conservation were created by statute. See La. Rev. Stat. § 36:4 (DNR is executive department); La Rev. Stat. § 36:351 (creating DNR); La. Rev. Stat. § 36:358(C) (Office of Conservation is part of DNR); La. Rev. Stat. § 30:1 (creating Office of Conservation). The Louisiana Supreme Court has held "[i]f the office is created by the legislature, or is established in the first instance by the constitution, it is a state office." *Mullins v. Louisiana*, 387 So.2d 1151, 1152 (La.1980). Based on this pronouncement, federal courts have viewed legislatively created agencies and departments, like DNR, "as part of the state." *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986).

Louisiana executive departments have Eleventh Amendment immunity." *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313 (5th Cir. 1999); *see also SkyRunner, LLC v. Louisiana Motor Vehicle Comm'n*, 2019 WL 5681537, at *3 (W.D. La. Oct. 31, 2019) ("The Fifth Circuit has routinely held that a department within the executive branch qualifies as an arm of the state."). Therefore, DNR's status as an executive department weighs heavily in favor of finding both it and its Office of Conservation are alter egos of the State of Louisiana.

But perhaps most important, several state and federal courts, including this one, have specifically found the DNR, or an office within the DNR, to be an arm or alter ego of the State. *See Deumite v. State*, 692 So.2d 1127, 1140 (La. App. 1 Cir. 1997) ("As far as status is concerned, DNR is [] the alter ego of the state. . . . The DFW and the DNR are coterminous departments within the executive branch . . . they are state agencies as contrasted with political subdivisions of the State."); *see also* La. Rev. Stat. § 36:359 (State Mineral Board is part of the Department of Natural Resources); *Louisiana Land & Expl. Co. v. State Mineral Bd.*, 229 F.2d 5, 8 (5th Cir. 1956) ("We, therefore, are of the opinion that this suit against the State Mineral Board, a mere agency or arm of the State, is in effect, a suit against the State . . . under the Eleventh Amendment . . . ."); *Tardan v. Chevron Oil Co.*, 463 F.2d 651, 653 (5th Cir. 1972) ("This Court is unwilling to accept the notion that the State Mineral Board is a separate body from the State."); *Dunhill Res. I, L.L.C. v. Louisiana ex rel. Louisiana State Mineral Bd.*, 298 F. Supp. 2d 404, 412–13 (M.D. La. 2003) (State Mineral Board is arm of the state).

Federal district courts have also consistently remanded cases against the DNR, or one of its offices, for lack of subject matter jurisdiction — because the case was either barred by the 11th Amendment or complete diversity did not exist. *See Meyer v. Callon Petroleum Oil Co.*, 1995 WL 222179, at *1 (E.D. La. Apr. 10, 1995) (allowing plaintiff to add Louisiana Department of Natural

Resources as a defendant required remand; under 11th Amendment, court lacked jurisdiction to hear damages claim against Louisiana Department of Natural Resources); *Crimson Expl. Operating, Inc. v. State Mineral Bd. for Louisiana*, 2009 WL 10679384, at *3 (M.D. La. Oct. 2, 2009) ("It is also apparent that the plaintiff asserted its federal and state law claims against the State and State entities" — specifically, the Louisiana Department of Natural Resources and the State Mineral Board. "These allegations plainly trigger the Eleventh Amendment bar to this court's exercise of federal jurisdiction."); *Broussard v. BP America Production Co*., 2008 WL 114222671, at *1 (W.D. La. Sept. 8, 2008) ("[I]t is clear that granting plaintiffs' motion to amend" to add the Louisiana Department of Environmental Quality and the Louisiana Department of Natural Resources as defendants "would destroy diversity. A state is not a 'citizen' within the meaning of the diversity statute."). The consistent treatment of the DNR, including its offices, as an alter ego or arm of the State convinces this Court that the Department of Natural Resources, Office of Conservation is an alter ego of the State of Louisiana. Therefore, the Plaintiff's lack of citizenship precludes diversity jurisdiction under 28 U.S.C. § 1332(a). Nonetheless, we will briefly consider the remaining factors.

**Source of Funding**. In its Reply Memorandum, the State makes clear that the Department of Natural Resources, including its Office of Conservation, is largely funded by the State General Fund. (No. 19-640, R. Doc. 26 at 10) ("[T]he Office of Conservation is funded through the State's General Fund." (citing State Budget FY2018-2019 at 121-22 (funding DNR and the offices within it, including Office of Conservation)).[9] The Louisiana Constitution also provides that judgments against state agencies will be paid only from "funds appropriated" for that purpose by the state legislature. La. Const. art. XII, § 10(C); *see also Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d

---

[9] Available at: https://www.doa.la.gov/opb/pub/FY19/StateBudgetFY19_revised.pdf.

183, 187 (5th Cir. 1986) (fact that any judgment against executive department and its commission would be paid by state weighed in favor of department being arm of the state). This factor also weighs in DNR's favor.

**Degree of Local Autonomy**. This factor concerns an "entity's degree of authority independent from the state." *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 187 (5th Cir. 1986). Here, the secretary of the DNR is under the control and supervision of the Governor. *See* La. Rev. Stat. § 36:353 ("There shall be a secretary of natural resources, who shall be appointed by the governor with consent of the Senate and who shall serve at the pleasure of the governor at a salary fixed by the governor . . . the secretary shall perform his functions under the general control and supervision of the governor."). And the governor exercises similar control over the commissioner of conservation. *See* La. Rev. Stat. § 30:19(A)-(B) ("a commissioner of conservation [] shall be appointed by the governor, with the consent of the Senate . . . . the salary of the commissioner of conservation shall be fixed by the governor."). This lack of local autonomy also weighs in favor of the Department of Natural Resources, including its Office of Conservation, being considered an alter ego of the State of Louisiana. *See Darlak v. Bobear*, 814 F.2d 1055, 1059 (5th Cir. 1987) ("The third factor in our analysis, the degree of local autonomy that the agency enjoys, also points to a finding of immunity on the part of both DHHR and Charity. The Secretary of DHHR is under the control and supervision of the governor, and serves at the pleasure of the governor."); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 187 (5th Cir. 1986) ("The Department is headed by a secretary who functions under the control and supervision of the governor and serves at the governor's pleasure. This indicates a lack of independence . . . . Members of the Commission are appointed by the governor and are confirmed by the state senate . . . .

Considering the relationship between the Department and the Commission, this factor does not point away from Eleventh Amendment immunity as to the Commission.").

**Degree of Local Concern**. The DNR, and specifically its Office of Conservation, are concerned with statewide functions and preempt local authority. *See* La. Rev. Stat. § 36:351 ("The Department of Natural Resources, through its offices and officers," including the Office of Conservation, "shall be responsible for the conservation, management, and development of water, minerals, and other such natural resources of the state, including coastal management, except timber and fish and wildlife and their habitats."); La. Rev. Stat. 36:358(C) ("The office of conservation . . . shall exercise the functions of the state with respect to the regulation, conservation, and use of the natural resources of the state."); *St. Tammany Par. Gov't v. Welsh*, 199 So. 3d 3, 8 (La. App. 1 Cir. 2016) ("The Commissioner [of Conservation's] power is an exercise of the State's police powers" and preempts local efforts to regulate oil and gas.). This factor also weighs in DNR's favor.

Considering all of the factors listed above, combined with the numerous cases recognizing the DNR, or one of its offices, as part of the state, it is clear that the Department of Natural Resources, Office of Conservation is the alter ego of the State of Louisiana. The State is therefore the real party in interest. And because the State of Louisiana is not a "citizen" for purposes of diversity jurisdiction, this Court cannot exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

The Court will now turn to the second basis for jurisdiction alleged by Defendants, bankruptcy jurisdiction under 28 U.S.C. § 1334(b). As explained below, the Court will permissively abstain from exercising bankruptcy jurisdiction, and this case will instead be equitably remanded to the state court. *See* 28 U.S.C. § 1334(c)(1) (permissive abstention); 28

U.S.C. § 1452(b) (equitable remand). And because permissive abstention may be appropriate even when an independent basis for federal jurisdiction exists, the Court notes that the ultimate result — remand — would not change even if it agreed with Defendants' assertion of diversity jurisdiction. *See In re Podnemny*, 2010 WL 1795269, at *6-8 (Banr. D.N.M. May 3, 2010) (permissibly abstaining under § 1334(c)(1), despite the presence of diversity jurisdiction); *In re Sun Healthcare Group, Inc.*, 267 B.R. 673, 678-79 (Bankr. D. Del. 2000) (permissibly abstaining under § 1334(c)(1), despite independent basis for federal jurisdiction under 28 U.S.C. § 1332(a)).

## C.    Related to Bankruptcy

The bankruptcy jurisdiction statute provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11," 28 U.S.C. § 1334(a), also known as "core proceedings."[10] Otherwise, in all "non-core proceedings," the district courts shall have original but

---

[10] The various Defendants do not argue that the State's cause of action constitutes a 'core' proceeding and therefore must remain in federal court. Instead, they suggest the bankruptcy court's retention of jurisdiction in 2 of its orders now "preclude[s] the State from objecting to federal jurisdiction related to these bonds." (No. 19-640, R. Doc. 10 at 9) (citing Order at 3, *In re Northstar*, No. 16-bk-34028 (Bankr. S.D. Tex. Nov. 16, 2017), ECF No. 948 (retaining "exclusive jurisdiction")); (No. 19-614, R. Doc. 1 at 2-3) (citing Sale Order at 39, *In re Northstar*, No. 16-bk-34028 (Bankr. S.D. Tex. Aug. 2, 2017), ECF No. 792 (retaining "jurisdiction")). But this argument misses the mark.

Bankruptcy courts often issue orders that include similar provisions retaining jurisdiction. *See Unico Holdings, Inc. v. Nutramax Prod., Inc*., 264 B.R. 779, 785 (Bankr. S.D. Fla. 2001) ("It is extremely common for a bankruptcy court to insert a clause . . . that reserves the jurisdiction of the bankruptcy court." (collecting cases)). Even still, an order "may not delegate unlimited authority to a bankruptcy judge" and those jurisdictional provisions are "meaningful only to the extent that core jurisdiction is otherwise found." *Kalamazoo Realty Venture Ltd. Partnership v. Blockbuster Entm't Corp.*, 249 B.R. 879, 886 (N.D. Ill. 2000). Here, there is no dispute that the State's cause of action is a non-core proceeding, rendering insignificant the Bankruptcy court's retention of jurisdiction.

But most fatal to Defendants' argument is that a bankruptcy court does not divest any other court of concurrent jurisdiction, including state courts, when it retains jurisdiction over certain matters. *See In re Brady, Texas, Mun. Gas Corp*., 936 F.2d 212, 219 (5th Cir. 1991) ("[T]he plan stated that the bankruptcy court would retain jurisdiction to resolve the controversy between Brady Gas and the appellants. However, the appellants have drawn an erroneous legal conclusion from that fact. At most, this provision enabled the bankruptcy court to adjudicate the dispute . . . even though the debtor's plan was already confirmed; it did not divest the state court of its concurrent jurisdiction to resolve that dispute."); *In re Friede Goldman Halter, Inc.*, 602 B.R. 307, 312 (Bankr. M.D. La. 2019) ("[A] bankruptcy court's retention of jurisdiction over a specific dispute does not divest another court of concurrent jurisdiction . . . . Therefore, the FGH plan's retaining bankruptcy court jurisdiction . . . did not divest the state court of jurisdiction . . . ."). And finally, "[j]urisdiction to interpret bankruptcy orders is not exclusive to federal courts." *In re Friede Goldman Halter, Inc.*, 602 B.R. 307, 312 (Bankr. M.D. La. 2019). Therefore, nothing in the bankruptcy court's orders "preclude the State from objecting to federal jurisdiction" or otherwise mandate "federal jurisdiction," as Defendants suggest. (No. 19-640, R. Doc. 10 at 9).

not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Here, the State has sued non-debtor Defendants for specific performance. "Under Louisiana's civil law system, specific performance is the preferred remedy for" a state law claim for "breach of contract." *Charter Sch. of Pine Grove, Inc. v. St. Helena Par. Sch. Bd.*, (La. 9 So. 3d 209, 222 (La. App. 1 Cir. 2009). Because the State's cause of action "do[es] not arise under federal bankruptcy law," it "do[es] not constitute a 'core' proceeding" over which the district court would have exclusive jurisdiction. *Adelsflugel v. Consolidated Aluminium Corp.*, 2014 WL 4181002, at *1 (M.D. La. Aug. 19, 2014); *see also In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987) ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding."). At most, the State's claims may be "related to" the Northstar bankruptcy proceeding and would constitute a non-core proceeding. The State argues that the Court only had 'related to' jurisdiction over its claims against Sanare and NOV; and following their dismissal, "there is no conceivable way . . . the current dispute could have any effect on the estate being administered in bankruptcy." (No. 19-614, R. Doc. 6-1 at 5). Under the circumstances, the State suggests, abstention is appropriate pursuant to 28 U.S.C. § 1334(c) (allowing district court to permissively abstain even where 'related to' jurisdiction exists).

"Congress has not specifically defined what constitutes 'related to' jurisdiction and, therefore, a non-core proceeding. *Adelsflugel*, 2014 WL 4181002, at *1. In broadly defining bankruptcy jurisdiction under § 1334(b), the Fifth Circuit has held that a proceeding is "related to" bankruptcy, or non-core, where "the outcome . . . could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987); *see also In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999) ("For jurisdiction to attach, the anticipated outcome of

the action must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate.").

Here, the Court will assume without deciding that the State's cause of action is 'related to' the Northstar bankruptcy, thereby conferring jurisdiction under 28 U.S.C. § 1334(b). *See Adelsflugel*, 2014 WL 4181002, at *2 (court "need not decide" whether related to jurisdiction exists, where permissive abstention and equitable remand are otherwise appropriate). But even if the Court agreed with Defendants' contention that this case is "related to" the Northstar bankruptcy, both permissive abstention, 28 U.S.C. § 1334(c), and equitable remand, 28 U.S.C. § 1452(b),[11] apply here and support remand of the State's cause of action.

### D.    Permissive Abstention and Equitable Remand

A federal district court may remand an action removed under 28 U.S.C. § 1452 "on any equitable ground." 28 U.S.C. § 1452(b). Similarly, a district court may permissively abstain from hearing a proceeding "related to" a bankruptcy "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). "The factors that a district court considers to determine whether it should permissively abstain also support equitable remand under

---

[11] The Court notes that the State has not argued that equitable remand is appropriate. And while the State asserts permissive abstention under 28 U.S.C. § 1334(c) in its Motions to Remand, it also confusingly argues that *Pullman* abstention is likewise appropriate. (No. 19-614, R. Doc. 6-1 at 5-9) (arguing both permissive abstention and *Pullman* abstention); (No. 19-640, R. Doc. 6-1 at 5, R. Doc. 26 at 16) (permissive abstention under § 1334(c)). Under *Pullman*, "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, (1984). There is clearly no 'substantial federal constitutional question' before this Court and *Pullman* is wholly inapplicable. Nonetheless, the Court finds permissive abstention under § 1334(c) appropriate, as well as equitable remand under § 1452(b). The fact that the State failed to argue equitable remand in their filings is of no moment. This Court has previously recognized that both permissive abstention and equitable remand may be raised by the Court sua sponte. *See Vitter v. Johnson & Johnson*, 2019 WL 2913983, at *3 n.6 (M.D. La. July 8, 2019); *see also Smith v. Wal-Mart Stores, Inc.*, 305 F. Supp. 2d 652, 658 n.9 (S.D. Miss. 2003) ("Although mandatory abstention requires that a timely motion be made by a party, permissive or discretionary abstention under § 1334(c)(1) may be raised by the court sua sponte, as may equitable remand under § 1452(b), which imposes no requirement of a motion by a party."). Moreover, the Court notes that Defendants have responded to the State's assertion of permissive abstention under § 1334(c). (No. 19-640, R. Doc. 10 at 9, R. Doc. 13 at 15-18). And because the analysis is identical for both permissive abstention and equitable remand, there is no prejudice in the Court's decision to consider equitable remand in addition to permissive abstention.

28 U.S.C. § 1452." *Orion Ref. Corp. v. Fluor Enterprises, Inc*., 319 B.R. 480, 488–89 (E.D. La. 2004); *see also Adelsflugel*, 2014 WL 4181002, at *2 ("Courts have equated the factors for equitable remand and permissive abstention."); *Borne v. New Orleans Health Care, Inc*., 116 B.R. 487, 494 (E.D. La. 1990) ("[T]he considerations underlying discretionary abstention and remand are the same.").

To decide whether equitable remand and permissive abstention are appropriate, the Court considers the following factors:

> (1) forum *non conveniens*; (2) a preference for a bifurcated action to be tried in the same court; (3) whether the state court is better able to respond to questions involving state law; (4) expertise of the court; (5) duplicative and uneconomic effort of judicial resources; (6) prejudice to the involuntarily removed parties; (7) comity; (8) a lessened possibility of an inconsistent result; (9) the presence in the proceeding of nondebtor parties; (10) the absence of any basis for jurisdiction other than section 1334; (11) the predominance of state law issues; (12) the degree of relatedness of the proceeding to the bankruptcy case; and (13) the likelihood of forum shopping.

*Nase v. TECO Energy, Inc*., 2010 WL 924290, at *4 (E.D. La. March 9, 2010). As this Court recently explained, because the relevant statues "afford[] an unusually broad grant of authority, any one of the relevant factors may provide a sufficient basis for equitable remand." *Vitter v. Johnson & Johnson*, 2019 WL 2913983, at *3 (M.D. La. July 8, 2019). Application of these factors convince the Court that remand is warranted.

Here, the State's cause of action arises entirely under state law.  *See Charter Sch. of Pine Grove, Inc. v. St. Helena Par. Sch. Bd*., (La. 9 So. 3d 209, 222 (La. App. 1 Cir. 2009) ("Under Louisiana's civil law system, specific performance is the preferred remedy for" a state law claim for "breach of contract."). Moreover, the state court will be more familiar with DNR's responsibility for ensuring the plugging and abandoning of oil wells and its use of performance bonds to guarantee those obligations. Indeed, the State's requested relief supports the Court's decision to abstain and allow the state court to decide this case.

> [T]he State prays that a judgment for specific performance issue in its favor directing [the sureties] to either: (1) tender the amount of [$2.5 million]; or (2) plug and abandon the outstanding wells on a schedule approved by the Commissioner in accordance with the applicable Louisiana laws and regulations.

(No. 19-640, R. Doc. 1-1 at 9). The State court is undoubtably "better able to respond to [these] questions involving state law" and the Department of Natural Resources, Office of Conservation's enforcement scheme. *In re Friede Goldman Halter, Inc.*, 602 B.R. 307, 314-15 (Bankr. M.D. La. 2019) ("Permissive abstention and equitable remand both favor comity and the resolution of state law questions by state courts."). Permissive abstention and remand to the state court will also "decrease the likelihood of inconsistent state law decisions." *Orion Refining Corp. v. Flour Enterprises, Inc.*, 319 B.R. 480, 488 (E.D. La. 2004) (abstention appropriate under § 1334(c), where plaintiff asserted only state law claims).

And as discussed above, there is no basis for federal jurisdiction other than the asserted connection to the Northstar bankruptcy. *See Vitter v. Johnson & Johnson*, 2019 WL 2913983, at * (M.D. La. July 8, 2019) (absence of another basis for federal jurisdiction weighs in favor or abstention and remand); *Adelsflugel*, 2014 WL 4181002, at *4 (lack of independent basis for federal jurisdiction favored remand and permissive abstention).

Moreover, "the degree of relatedness" between the State's claims and the bankruptcy proceeding do not appear strong. *Vitter*, 2019 WL 2913983, at *4 (considering degree of relatedness). To begin, the oil wells covered by the bonds at issue were not made part of the bankruptcy estate, nor were they included in the Sale Order transferring the majority of Northstar's assets to Sanar. *See* Disclosure Statement at 12, 23-24, *In re Northstar*, No. 16-bk-34028 (Bankr. S.D. Tex. Nov. 22, 2017), ECF No. 983. Moreover, on December 22, 2017 — almost 2 years before this suit was filed — the bankruptcy court confirmed Northstar's Chapter 11 Plan of Liquidation, Confirmation Order, *In re Northstar*, No. 16-bk-34028 (Bankr. S.D. Tex. Dec. 22,

2017), ECF Nos. 1078, 1092, which took effect on January 19, 2018. *Accord In re WRT Energy Corp.*, 402 B.R. 717, 724 (Bankr. W.D. La. 2007) ("[C]ourt's 'related to' jurisdiction is considerably more limited once the court confirms a plan under Chapter 11."). Beyond that, the State's lawsuit could arise "independent of a bankruptcy case" if Northstar had otherwise failed to comply with its P&A Obligations. *In re Sun Healthcare Grp., Inc.*, 267 B.R. 673, 678-79 (Bankr. D. Del. 2000) (considering independence of claim in connection with relatedness).

Nonetheless, Lexon characterizes this suit as an effort by the State to "revive its right to pursue Northstar through the subject bonds," even though the State entered into an "unequivocal release of all its claims and rights against Northstar" during the bankruptcy proceedings. (No. 19-640, R. Doc. 10 at 9). While this might suggest a substantial degree of relatedness, and potentially even a core proceeding, Lexon's characterization is not supported by either the State's Complaint, which seeks no relief from Northstar, or the bankruptcy record.

On November 16, 2017, the bankruptcy court issued an Order excluding the Creole Wells and Leases from the estate and relieving Northstar of its obligations to plug and abandon (P&A Obligations) those wells. *See In re Northstar*, No. 16-bk-34028 (Bankr. S.D. Tex. Nov. 16, 2017), ECF No. 948. In support of its motion requesting abandonment, Northstar suggested that:

> [I]f the abandonment [of the Creole Wells and Leases] is denied, any non-abandoned property will remain with the Debtor, who has no means to fund any P&A Obligation . . . . [A]llowing abandonment is the only viable solution to ensure that any P&A Obligations are met vis-a-vis [performance] bonds . . . .

Northstar's Response at 7, *In re Northstar*, No. 16-bk-34028 (Bankr. S.D. Tex. Nov. 6, 2017), ECF No. 920. The bankruptcy court agreed, relying on the State's separate ability to call on the performance bonds, which would "guarantee[] at least partial compliance with P&A Obligations," in granting Northstar's requested relief. ECF No. 948 at 3. To be clear, the bankruptcy court recognized the State's rights under the performance bonds were separate and unimpaired by the

release of its rights against Northstar.[12] So while the Court recognizes the relatedness of this case to the bankruptcy proceedings, the two are not so related that this Court should retain jurisdiction, as Lexon suggests.

The Court also notes that the debtor is not a party to this litigation, *Adelsflugel*, 2014 WL 4181002, at \*3 (a consideration favoring remand), and finds no evidence that litigating the State's case in state court will have any "detrimental effect on the efficient administration of the bankruptcy estate." *Orion Refining Corp.*, 319 B.R. at 489. Beyond that, nothing suggests this action cannot be timely adjudicated by the state court following remand. *See Adelsflugel*, 2014 WL 4181002, at \*3 (considering this and other factors which are relevant to mandatory abstention under 28 U.S.C. § 1334(c)(2)).

Finally, the Court does not find any party will be prejudiced by remand to the 19th Judicial District Court for the Parish of East Baton Rouge. Indeed, Lexon consented to jurisdiction in state court when it executed the performance bond:

> The surety consents and agrees that any legal action against it under this Performance Bond may be brought in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, hereby irrevocably submitting itself to the jurisdiction and venue of such court.

(No. 19-640, R. Doc. 1-1 at 35).

And so, placing great emphasis on "comity and the resolution of state law questions by state courts," *In re Friede Goldman Halter, Inc.*, 602 B.R. at 314-15, this Court recommends abstaining from the exercise of bankruptcy jurisdiction over the State's cause of action, 28 U.S.C. § 1334(c)(1), and equitably remanding this case to the state court, 28 U.S.C. § 1452(b).

---

[12] Lexon also argues the State's lawsuit may potentially result in "new claims against [Northstar]" in the bankruptcy proceeding, suggesting a higher degree of relatedness. But the Court notes that Lexon's Proof of Claim already includes the performance bond at issue, see Proof of Claim No. 50, albeit any related litigation expenses remain unspecified. (Lexon Proof of Claim No. 50, available at: https://cases.primeclerk.com/northstar/Home-ClaimInfo).

### III.    CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the State's Motions to Remand (No. 19-614, R. Doc. 6), (No. 19-640, R. Doc. 6) be **GRANTED** and the State's cause of action be **REMANDED** to the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.

Signed in Baton Rouge, Louisiana, on September 15, 2020.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**